581 P.2d 706

STATE of Arizona, Appellee,

v.

Michael Thomas STARR, Appellant.

No. 1 CA–CR 2600.

Court of Appeals of Arizona,
Division 1,
Department C.

May 25, 1978.

Rehearing Denied June 28, 1978.

Review Denied July 18, 1978.

Bruce E. Babbitt, Former Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Gerald F. Moore, Phoenix, for appellant.

## OPINION

SCHROEDER, Judge.

Following a trial by jury, appellant was convicted of attempted burglary, first degree, a felony, and possession of marijuana, a misdemeanor. On the felony conviction, appellant was sentenced to the Arizona State Prison for not less than two nor more than three years. On the misdemeanor conviction, appellant was sentenced to time served. It is from these judgments and sentences that this appeal is taken.

The principal issues before us involve the admissibility of statements made by the appellant prior to the giving of *Miranda* warnings, and the admissibility of burglary tools discovered by police in an open glove compartment of appellant's car. Determination of these issues requires an understanding of the factual circumstances surrounding appellant's arrest and the subsequent search of the vehicle.

At approximately 2:45 a. m. a Phoenix police officer, while on routine patrol observed a car parked in a deserted gas station lot next to a fence which separated the gas station from an adjacent bar. The police officer observed an individual, later identified as appellant, run from the door of the bar toward the automobile, jump the fence, deposit something underneath the car, and surreptitiously enter it. The officer observed movement in the car and concluded that there were two people inside. The police officer then drove into the service station lot, turned on his spotlight and asked the occupants of the vehicle to get out with their hands up. He then conducted a pat-down search for weapons, and asked for the occupants' personal identification and the automobile's registration. Appellant obtained the vehicle's registration from the glove compartment.

While the two men were showing the requested identification, the following colloquy took place between appellant and the officer, Officer Moran:

OFFICER MORAN: "What were you doing, closing the [bar]?"

APPELLANT: "Yeah."

OFFICER MORAN: "Are you a bartender?"

APPELLANT: "No, but I have tended bar in the past."

OFFICER MORAN: "What do you do it for then?"

APPELLANT: "The beer."

The officer then noticed a reddish object on the ground underneath the driver's side of appellant's automobile, and upon examination determined that it was a bundle of lock picking tools. Appellant was placed under arrest for possession of lock picking tools, and a search, incidental to the arrest, was conducted. The search of his person revealed a marijuana cigarette. Appellant was placed in the patrol car.

The officer proceeded to examine the door to the bar, and determined that there had been recent tampering with the lock. He then went back to the patrol car, informed appellant that he was under arrest for burglary, and advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant responded that he wished to see an attorney.

The officer then completed his investigation of the bar premises and, before locking appellant's car and leaving it at the scene, conducted a search of the car for the purpose of inventorying its contents. The evidence before the trial court indicated that it was police department policy to inventory cars for valuables in such situations in order to protect the department against claims of theft. While sitting on the front seat of the car, and apparently before instituting any actual search, the officer observed that appellant had left the door to the glove compartment open, and that inside the glove compartment were more burglary tools. These items were seized and were admitted into evidence at the trial. No other evidence or anything of value was discovered during the course of the subsequent inventory search.

■ The first argument raised by appellant in this appeal is that the statements which he made in response to Officer Moran's initial questions concerning his reason for being in the area at that hour should have been suppressed because they were made before he was advised of his *Miranda* rights. Assuming arguendo that appellant's responses were significantly incriminating, we hold that they were admissible because they were in response to general on-the-scene questioning, and were not made in the context of a custodial interrogation.

Appellant focuses on language in the Supreme Court's opinion in *Miranda*, which defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706 (footnote omitted). However, the Supreme Court in the *Miranda* decision itself pointed out that while suspects must be advised of their constitutional rights prior to undergoing custodial interrogation, such interrogations must be distinguished from general, on-the-scene investigations:

"Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." *Id.* at 477–78, 86 S.Ct. at 1629–30, 16 L.Ed.2d at 725–26 (citations omitted) (footnote omitted).

Courts have generally considered the totality of the circumstances surrounding a stop in deciding whether a person is subjected to a custodial interrogation. These circumstances include the nature of the in-

terrogator, the nature of the suspect, the time and place of the questioning, the nature of the questioning, and the progress of the investigation at the time of the questioning. *State v. Kennedy*, 116 Ariz. 566, 570 P.2d 508 (Ct.App.1977); Annot. 31 A.L. R.3d 565, 577 (1970). In a sense, all investigatory stops for on-the-spot questioning deprive a person of some freedom of action since a person being asked questions by the police would normally not feel that he was free to go. However, as the Arizona Supreme Court has recognized, it is only when the on-the-scene questioning becomes accusatory in nature and when a reasonable man would feel he was deprived of his freedom of action in a significant way, that the *Miranda* warnings must be given. *See State v. Hatton*, 116 Ariz. 142, 146, 568 P.2d 1040, 1044 (1977); *State v. Landrum*, 112 Ariz. 555, 559, 544 P.2d 664, 668 (1976).

In this case, the nature of the questioning prior to the giving of *Miranda* warnings can be characterized only as investigatory. It was limited to requesting identification and the reasons for appellant's presence in suspicious circumstances. It was only when the first burglary tools were found underneath the car that the focus of the investigation shifted to specific criminal activity. At that point, the *Miranda* warnings were correctly given.

The fact that the officer requested appellant to leave his automobile and conducted a limited search for weapons in the course of this preliminary questioning does not serve to transform the questioning itself into a custodial interrogation. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court recognized that in appropriate circumstances a police officer can approach an individual for the purpose of investigating possible criminal activity and make a limited search for weapons if he has reason to believe that he is in danger. As Chief Justice Warren stated in *Terry*:

> "[W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may

lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Id.* at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907–08.

In a later decision, the Supreme Court explained that a *Terry* search may be conducted in the course of a stop of a suspicious individual in order to "maintain the status quo momentarily while obtaining more information . . . ." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972). *Accord, State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (1976). *See also, People v. Hill*, 12 Cal.3d 731, 117 Cal.Rptr. 393, 528 P.2d 1 (1974), in which the court addressed the question of whether statements made at the time of a *Terry* frisk should be suppressed because of the absence of *Miranda* warnings. In that case, the officer had asked where the defendant had obtained money which was protruding from his pocket at the time of the *Terry* frisk. The court stated that the officer's question

> "was merely an instance of 'general on-the-scene investigatory questioning' with respect to which *Miranda* notice requirements are inapplicable. At the time [the officer] asked the question [the defendant] was not suspected of any crime. The type of question asked is a permissible means for a police officer who has detained someone to quickly ascertain whether such person should be released or held for further investigation." *Id.* at 767, 117 Cal.Rptr. at 420, 528 P.2d at 28 (citations omitted).

*See also, Arnold v. United States*, 382 F.2d 4 (9th Cir. 1967).

In accordance with these principles governing the scope of permissible police questioning and conduct in the course of on-the-scene investigations, the statements made

by appellant prior to being given *Miranda* warnings and prior to the discovery of evidence linking him to actual criminal activity were properly admissible.

■ We turn next to appellant's contention that the officer's seizure of additional burglary tools located in an open glove compartment and observed while the officer was initiating an inventory search of the vehicle was unreasonable. The tools were observed by the officer while he was sitting on the front seat of the vehicle, and from that position, were in his plain view. The appellant argues, in essence, that the police officer had no right to be in the vehicle at all, and that, therefore, the seizure cannot qualify as falling within the "plain view" exception to the fourth amendment prohibition against warrantless searches and seizures. *See generally, State v. Warness*, 26 Ariz.App. 359, 548 P.2d 853 (1976).

We disagree. Regardless of whether the police officer was justified in conducting a full inventory search of the automobile in this case, he clearly was justified in entering the vehicle for the purpose of locking the doors and securing it. Although the appellant did not consent to any search, and in fact expressly told the police officer he objected to one, the challenged evidence was not in fact the product of the inventory search.[1]

■ Appellant raises three other issues for our review. The first concerns the admissibility of certain statements made in response to police questioning after the burglary tools were found in the glove compartment and after appellant had been given his *Miranda* warnings and had stated that he wished to see an attorney. The prosecution agreed with appellant that these statements should be suppressed, but the trial court nevertheless denied appellant's motion to suppress. At the trial, however, the State made no reference to those statements. The appellant himself,

when he took the stand and over objection by the State, gave his testimony in narrative form and included the substance of those statements. We conclude that any prejudice to the defense arising from the reference to those statements came from appellant's own action and not as a result of the trial court's original ruling or from any conduct by the prosecution. It was invited error and cannot form the basis for reversal. *State v. Wilcynski*, 111 Ariz. 533, 534 P.2d 738, *cert. denied*, 423 U.S. 873, 96 S.Ct. 141, 46 L.Ed.2d 104 (1975); *State v. Gilreath*, 107 Ariz. 318, 487 P.2d 385 (1971); *cert. denied*, 406 U.S. 921, 92 S.Ct. 1781, 32 L.Ed.2d 121 (1972).

■ Appellant next claims that the prosecutor was guilty of misconduct when she included in closing argument the substance of an instruction on circumstantial evidence which the court had previously refused to give. The prosecutor's statements were perfectly consistent with our law that a conviction may be based on circumstantial evidence as well as on direct evidence. *State v. Green*, 111 Ariz. 444, 532 P.2d 506 (1975). The subject of circumstantial evidence was originally raised by appellant's counsel in his closing argument, and the prosecutor's remarks were in response to them. There was no reversible error. *See State v. Stoneman*, 115 Ariz. 594, 566 P.2d 1340 (1977); *State v. Owens*, 112 Ariz. 223, 540 P.2d 695 (1975).

■ Appellant's final argument is that the trial court should have instructed the jury that appellant could be found guilty of attempted trespass as a lesser included offense of attempted burglary. Appellant concedes that trespass is not a lesser included offense of burglary. *In Matter of Appeal in Maricopa County, Juvenile Action No. J–75755*, 111 Ariz. 103, 523 P.2d 1304 (1974); *see also, State v. Miller*, 108 Ariz. 441, 501 P.2d 383 (1972). Appellant argues that when the element of attempt is added

---

1. The Supreme Court has upheld inventory searches, but under guidelines which would appear to require that the police lawfully take actual possession of the vehicle. *South Dakota v. Opperman*, 428 U.S. 364, 373, 96 S.Ct. 3092, 3098, 49 L.Ed.2d 1000, 1007 (1976). We do not decide in this case whether a full-scale inventory search is constitutionally valid in every case in which the police officers secure the car but do not take actual custody of it.

to each crime, the difference between the two crimes becomes less significant. Appellant cites no authority or persuasive rationale for concluding that the trial court should have treated attempted trespass as a lesser included offense of attempted burglary, and we perceive none.

The judgments and sentences are affirmed.

DONOFRIO and WREN, JJ., concur.