854 P.2d 147

**STATE of Arizona, Appellee,**

v.

**Mercedes MARTINEZ, Appellant.**

**No. 1 CA–CR 91–1441.**

Court of Appeals of Arizona, Division 1, Department D.

May 11, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Ronald L. Crismon, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for appellant.

## OPINION

TOCI, Presiding Judge.

During a visit to his sister's apartment, Mercedes Levario Martinez ("defendant") pushed the front door closed while the police were attempting to enter pursuant to a warrant to search for narcotics. Defendant was charged with hindering prosecution and was convicted after a jury trial. During the trial, the state introduced defendant's prior felony convictions to impeach his credibility after he testified that the reason he held the door shut was to play a joke on his brother. In closing argument, the prosecutor, over objection, told the jury that the Arizona Supreme Court has said that a felon can reasonably be expected to be untruthful if it is to his advantage.

We must decide whether the trial court erred in (1) denying defendant's motion for a directed verdict of acquittal on the ground of insufficient evidence, (2) refusing to give defendant's requested instruction on "mere presence," and (3) overruling defense counsel's objection to the prosecutor's closing remarks which suggested that the Arizona Supreme Court believed a convicted felon was not a credible witness.

We reverse the conviction and remand this case for a new trial because we find a substantial probability that the prosecutor's improper remarks influenced the ver-

dict. In light of our decision, we have also addressed the first two issues. We conclude that the trial court properly denied defendant's motion for directed verdict because a reasonable jury could infer defendant's intent to hinder the apprehension, prosecution, conviction, or punishment of another from his action in obstructing police entry to serve a search warrant. We also find no error in the trial court's failure to give the instruction on "mere presence" where the defendant was not charged with possession of narcotics.

### FACTS AND PROCEDURAL HISTORY

Detective Upshaw of the Chandler Police Department testified that he and six other police officers went to defendant's sister's apartment to serve a search warrant for the premises. The officers were all wearing dark blue nylon raid windbreakers with a police badge over the left front pocket and "POLICE" clearly marked on the back and the right front pocket. Upshaw obtained a passkey to the apartment from the manager.

At trial, Upshaw testified that he inserted the key in the door, which was solid wood with no window or peephole. Before turning the knob, he knocked and announced the presence of the police and that they had a search warrant. After turning the knob, he pushed on the door, which opened only two to three inches before it was pushed shut from the inside. Upshaw again announced "police" and said that they had a search warrant. When he felt resistance against the door, the other officers joined in pushing on the door, and they slowly forced the door open. They found defendant standing behind the door. Elva Martinez, defendant's sister, was leaving the bathroom, and her boyfriend, Anthony Amarillas, was walking out of the kitchen. Police handcuffed all three and showed Elva Martinez the warrant to search the premises.

The police testified that before they searched the apartment, an officer advised defendant that he was under arrest for hindering prosecution because defendant had held the door shut when the officers were trying to enter. Defendant then told one officer a spring in the door made it stick, but he told another officer that defendant thought his brother had been outside the door, and defendant was playing a joke on him by pushing the door shut.

A search of the apartment produced a closed film canister containing thirteen foil-wrapped papers in the kitchen, which according to lab testing, contained heroin; money wrappers and a three-beam scale inside a stereo cabinet in the living room; two spoons, two caps, and two syringes containing heroin residue on the bathroom counter; and additional syringes inside Martinez's purse. The police then arrested Martinez and Amarillas on charges of possession of a narcotic for sale.

The defendant, who also testified at trial, gave a somewhat different version of the events. He stated that he customarily visited his sister once or twice a week. On the day in question, he arrived at his sister's apartment, and Amarillas told defendant that Martinez was in the bathroom. While waiting for his sister, defendant sat on a sofa near the door. Soon after, defendant heard a sound and looked in the direction of the living room door. He saw the door knob turning very slowly, and because he thought his brother or someone might be outside "playing something," defendant got up and put his foot against the bottom of the door. At the same time, just as the door opened slightly, he looked out of the shuttered window next to the door and saw a shoulder. He then pushed the door closed. Defendant testified that within a few seconds he understood the person or persons outside the door were yelling, "police." He backed away from the door. The police entered, threw him to the floor, and handcuffed him.

Defendant testified that he had no knowledge of the narcotics in the apartment and had not entered any area but the living room before the police officers arrived. He also testified, without dispute by the prosecution, that the police did not show him the search warrant before they entered the premises.

Defendant was charged with the intent to hinder the apprehension, prosecution, conviction, or punishment of Martinez and Amarillas for possession of a narcotic drug for sale. At trial, when the state rested, defendant moved for a directed verdict of acquittal. Defendant argued that the state had not shown that when defendant pushed the door shut he knew about the drugs in the apartment or knew that the police were attempting to execute a search warrant. Thus, according to defendant, insufficient evidence existed to convict. The trial judge disagreed; he denied the motion for directed verdict. Defendant moved for acquittal at the close of all the evidence, and the court again denied the motion.

The jury found defendant guilty of hindering prosecution and also found defendant guilty of two prior felony convictions. The trial court sentenced defendant to imprisonment for five years, the presumptive term for a class 5 felony with two prior convictions. The court credited defendant with 32 days of presentence incarceration. The court also ordered the defendant to pay $100 to the victim compensation fund and an $8 time payment fee. Defendant filed a timely notice of appeal.

## A. The Court Did Not Err in Denying Defendant's Motion for Directed Verdict Because Reasonable Minds Could Differ on the Issue of Defendant's Guilt.

■ Defendant argues first that the trial court erred in denying his motion under Rule 20(a), Arizona Rules of Criminal Procedure, for a directed verdict of acquittal. We disagree. Reasonable minds could differ on whether the defendant rendered assistance to his sister and Amarillas with the intent to hinder their apprehension, conviction, or punishment by obstructing execution of the search warrant. Thus, the trial court did not err in refusing to acquit the defendant.

It is proper for the trial court to deny a motion for a directed verdict when the evidence raises a question of fact for the jury. In addition, "it can be error to grant a motion for directed verdict when the evi-

dence is such that reasonable minds could differ on the inferences to be drawn therefrom." *State v. Hickle*, 129 Ariz. 330, 331, 631 P.2d 112, 113 (1981) (citation omitted). "A trial judge has no discretion to enter a judgment of acquittal in such a situation." *State v. Landrigan*, 848 P.2d 840, 843 (1993).

■ Defendant contends that he should have been acquitted because the state failed to prove he knew the contraband was present or that the police were there to apprehend Martinez and Amarillas. Thus, he argues, the necessary element of intent to hinder apprehension of another person was lacking. In addition, defendant asserts Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–2512 is aimed at actions that hinder the apprehension, prosecution, conviction, or punishment of a person but not "mere obstruction of the search of premises for contraband." We disagree with both propositions.

Defendant's act of pushing the apartment door shut, without more, cannot constitute a violation of A.R.S. section 13–2512(A). That section states in part: "A person commits hindering prosecution in the first degree if, with the intent to hinder the apprehension, prosecution, conviction or punishment of another for a felony, such person renders assistance to such person." Furthermore, the definition of "rendering assistance" in A.R.S. section 13–2510(4) provides that a person renders assistance to another person by knowingly "[p]reventing or obstructing by means of force, deception or intimidation anyone from performing an act that might aid in the discovery, apprehension, prosecution or conviction of the other person." Consequently, unless the defendant pushed the door shut with the requisite intent, he cannot be convicted of a violation of the statute.

Nevertheless, here the evidence established that defendant frequented his sister's apartment, and that on the day in question, drug paraphernalia were in plain sight in the bathroom. Furthermore, according to Detective Upshaw's testimony, after the police announced their presence and shouted that they had a search war-

rant, defendant pushed the front door of the apartment closed. The jury could infer that defendant knew drugs were being dealt in the apartment. and that he obstructed the police from performing an act (executing the search warrant) that might aid in the discovery, apprehension, prosecution, or conviction of his sister and Amarillas for possession of narcotic drugs. The jury could also infer that defendant rendered assistance to his sister and Amarillas with the intent to hinder their discovery, apprehension, prosecution, or conviction.

On the other hand, the jury might have believed the defendant's testimony that when he saw the front door being opened without explanation or identification, he concluded his brother was outside and decided to prevent his entry. The testimony of two officers who participated in the search corroborates, to some extent, the defendant's story. Officer Thatcher testified that Upshaw turned the door knob *before* he opened the door and announced the presence of the police. Thatcher said that *as the door opened,* Upshaw announced, "We're police officers. We have a search warrant." Similarly, Officer Bush testified on cross-examination that Upshaw inserted the key, turned the knob, knocked, and then said "police."

Under these circumstances, the evidence raised a question of fact for the jury, and the trial judge had no discretion to enter a judgment of acquittal. Thus, the trial judge did not err in denying defendant's motion to acquit.

### B. The Court Did Not Err In Refusing a "Mere Presence" Instruction.

█ Defendant was not entitled to a "mere presence" instruction because he was not charged with possession of narcotic drugs as a result of being present in the apartment when the police found such drugs. "It is not error to refuse to give specifically requested instructions when the jury instructions given by the trial court adequately set forth the law applicable to the case." *State v. Axley,* 132 Ariz. 383, 392, 646 P.2d 268, 277 (1982) (citations omitted). Similarly, "[i]t is not error to

refuse to give instructions which are not correct statements of law and do not fit the facts." *Id.* at 393, 646 P.2d at 278 (citation omitted). Here, the court correctly stated that defendant's presence at the crime scene was not the issue. Defendant was charged because of his actions in hindering the execution of the warrant. In this case, the requested instruction did not fit the facts, and the court did not err in refusing to give it.

█ Furthermore, "[c]losing arguments of counsel may be taken into account when assessing the adequacy of jury instructions." *State v. Bruggeman,* 161 Ariz. 508, 510, 779 P.2d 823, 825 (App.1989) (citations omitted). In closing, the state referred to its burden to prove that defendant intended to hinder the prosecution of his sister and Amarillas and that defendant actually did something to hinder their prosecution. In addition, defense counsel repeatedly focused attention on the state's burden to prove intent. Defense counsel also argued in closing argument that the defendant was not charged with possession of drugs and that no evidence existed that defendant knew the drugs were present. These arguments, coupled with the instructions given, brought to the jury's attention the requirements of the statutes on hindering prosecution.

### C. The Trial Court Should Have Granted a New Trial Because of the Prosecutor's Improper Closing Remarks.

█ We agree with defendant that the prosecutor's closing remarks, attributing to the Arizona Supreme Court a statement that a convicted felon can reasonably be expected to be untruthful, require reversal. The objected-to remarks were inconsistent with the trial court's instruction and informed the jury about extraneous matters not admissible in evidence. This error was compounded when the trial court overruled defendant's objection, thus permitting the prosecutor to further elaborate upon the improper remarks. Under the circumstances of this case, we cannot say beyond a reasonable doubt that the error was harmless.

■ The instruction the court gave the jury on the credibility of a defendant who has a prior felony conviction was taken from Maricopa County Standard Criminal Jury Instruction 19, formerly R.A.J.I. Standard Instruction No. 5A, which provides as follows:

> Evidence that the defendant has been convicted of a felony may be considered only for the purpose of determining the credibility of the defendant. *Such a conviction does not necessarily mean that you must disbelieve the defendant. It is one of the circumstances that you may consider in weighing the defendant's testimony.*

(Emphasis supplied.) The giving of this or a similar instruction on the credibility of a convicted felon is firmly established in the law of Arizona. *See State v. Carbajal*, 128 Ariz. 306, 308, 625 P.2d 895, 897 (1981); *State v. Canedo*, 125 Ariz. 197, 200, 608 P.2d 774, 777 (1980); *State v. Johnson*, 106 Ariz. 539, 541, 479 P.2d 424, 426 (1971).

Although the prosecutor did discuss in closing argument that part of the instruction which states that the jury would have to determine credibility of the witnesses, he did not confine his comments on the defendant's credibility to the above instruction. Instead, he reminded the jury of defendant's prior felony conviction and stated:

> Now the Arizona Supreme Court has commented on how you should take that in assessing the credibility of the defendant. They said, "All felonies have some probative value in determining a witness' credibility."
>
> They went on to say, "A major crime"—meaning a felony—"entails such an ... injury to and disregard of the rights of other persons *that it can be reasonably expected the witness will be untruthful if it is to his advantage.*"

(Emphasis supplied.)

Defense counsel objected; the court overruled the objection. The prosecutor continued, "The Supreme Court goes on to say, '*The perpetrator of a major criminal act has demonstrated such a lack of scruples as to show a willingness to give false testimony.*'" (Emphasis supplied.)

■ We start with the proposition that wide latitude is given in closing arguments; counsel may properly comment on the evidence and argue all reasonable inferences to be drawn from the evidence. *State v. Dumaine*, 162 Ariz. 392, 402, 783 P.2d 1184, 1194 (1989). Nevertheless, arguments to the jury "must be based on facts which the jury is entitled to find from the evidence and not on extraneous matters that were not and could not be received in evidence." *State v. Neil*, 102 Ariz. 299, 300, 428 P.2d 676, 677 (1967) (citation omitted). In *Neil*, the prosecutor said in closing remarks that defendant's lawyer misstated defendant's lack of a criminal background, and "I can prove it." Our supreme court held the statement was reversible error because no evidence of any prior felony convictions existed in the trial record. The court concluded that the prosecutor's closing argument did "not comport with the spirit of fairness which is one of the most basic tenets of the administration of criminal law." *Id.*

■ In this case, once the trial court admitted evidence that defendant had a prior conviction, the state was entitled to comment on that evidence and to argue all reasonable inferences affecting defendant's credibility that might be drawn from it. *State v. Amaya–Ruiz*, 166 Ariz. 152, 171, 800 P.2d 1260, 1279 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991) (citation omitted). The prosecutor could urge the jury to consider the prior conviction as a factor in weighing the defendant's testimony against the testimony of the police officers. But, the prosecutor could not have offered his own opinion of defendant's credibility. *State v. Hernandez*, 170 Ariz. 301, 307, 823 P.2d 1309, 1315 (App.1991). Nor could the state engage in prosecutorial "vouching" by either placing the prestige of the government behind its witness or by suggesting that information not presented to the jury supported a witness' testimony. *Dumaine*, 162 Ariz. at 401, 783 P.2d at 1193.

Here, the prosecutor did not technically engage in the conduct proscribed by *Hernandez* and *Dumaine*. But his rhetoric—

placing the imprimatur of the Arizona Supreme Court on the premise that one convicted of a felony "has demonstrated such a lack of scruples" that he can reasonably be expected to lie if it is to his advantage—was even more objectionable. The remarks alluded to an Arizona Supreme Court opinion not in evidence to bolster the state's theory of the case. This prejudiced the defense no less than had the prosecutor expressed his opinion on defendant's credibility or improperly vouched for a state's witness.

The vice of such remarks is that, if given credence by the jury, they may influence the verdict. *See Neil,* 102 Ariz. at 300, 428 P.2d at 677. This is especially true here, where the prosecutor's remarks reach far beyond the court's instruction that a prior felony conviction "is only one of the circumstances you may consider" and that it "does not necessarily mean that you must disbelieve the defendant." The prosecutor, in effect, instructed the jury that the supreme court has said that there is a presumption that a person convicted of a felony would give false testimony. This is a different standard for judging the credibility of a felon than that contained in the instruction given by the court. Consequently, the jury may have been misled as to which standard to apply.

We cannot agree that the court's correct instruction on the credibility of a felon as a witness cured the impropriety in the prosecutor's remarks. *State v. Starr,* 119 Ariz. 472, 581 P.2d 706 (App.1978) is inapposite. In *Starr,* the court declined to give the prosecutor's requested instruction on circumstantial evidence. Defense counsel raised the issue of circumstantial evidence in closing; the prosecutor then stated that the jury may base a conviction on circumstantial evidence. Our supreme court found no error in the prosecutor's remarks. The prosecutor had not urged the jury to consider an improper view of the evidence, but rather the remarks were "perfectly consistent" with Arizona law. *Id.* at 476, 581 P.2d at 710. Here, however, the prosecutor's closing remarks were inconsistent with established Arizona law em-bodied in instruction No. 19 given by the court.

The state also argues that although the prosecutor may have acted presumptuously in "supplementing" the trial court's instructions during closing, no reversible error occurred because the passage read by the prosecutor is a direct quote from *State v. Malloy,* 131 Ariz. 125, 127, 639 P.2d 315, 317 (1981). The fact that the prosecutor quoted directly from an Arizona Supreme Court case, however, does not help the state. Because appellate courts do not write to provide direct guidance for juries, appellate court opinions are not the stuff that closing remarks are made on. When we write to support a conclusion or dismiss an argument we sometimes use language that is argumentative, pejorative, or confusing to those not trained in the law. Legal principles conveyed to the jury, however, should neither be argumentative nor pejorative; such principles should be neutral and written in plain English so they do not confuse the jury. Thus, we have long discouraged jury instructions that quote verbatim from appellate opinions. *Petefish By and Through Clancy v. Dawe,* 137 Ariz. 570, 577 n. 6, 672 P.2d 914, 921 n. 6 (1983). Such language is seldom, if ever, in its raw form appropriate for delivery to a jury either in a jury instruction or in closing argument.

Second, the quoted language referred to by the prosecutor was taken from notes of the advisory committee on the Federal Rules of Evidence. It clearly was not the holding of *Malloy* and does not carry the weight of authority. *See Arizona Corp. Comm'n v. Mountain States Tel. & Tel. Co.,* 71 Ariz. 404, 412, 228 P.2d 749, 754 (1951) (language unnecessary to sustain the judgment is dictum). The issue in *Malloy* was whether defendant's prior class 1 misdemeanor conviction for attempted burglary was admissible for impeachment purposes. The court held the conviction inadmissible because it was not sufficiently serious to qualify under Rule 609(a)(1) and was not admissible under 609(a)(2) as a crime involving dishonesty or false state-

ment. The court concluded that Rule 609 "should be construed narrowly to include only those crimes involving some element of deceit, untruthfulness or falsification." *Malloy*, 131 Ariz. at 127, 639 P.2d at 317. The opinion urged trial courts to guard against the use of prior convictions unless the conviction was probative of truthfulness. Nothing suggests the reference to the advisory committee notes on Rule 609 was intended by the supreme court to establish a presumptive standard of disbelief for evaluating the credibility of a convicted felon.

■ Third, an appellate court opinion is neither competent nor relevant evidence in a jury trial. Because closing argument must be based on some theory of the case which may be found in the evidence, *see Neil*, 102 Ariz. at 300, 428 P.2d at 677 (jury arguments may not be based on matters that were not and could not be received in evidence), the fact that the prosecutor's closing remarks came from an Arizona Supreme Court case is beside the point. Although the court may permit either side to present arguments in closing based on the language of the jury instructions, the court erred when it allowed the prosecutor to "supplement" such instructions by going outside the record.

Finally, we cannot overlook the possible prejudice to the defense of the trial court's error in allowing the prosecutor's remarks. Nor can we escape the possibility that by overruling the defense objection, the court led the jury reasonably to believe that the court approved of the prosecutor's remarks. *See United States v. Pearson*, 746 F.2d 787, 796 (11th Cir.1984) (overruling objection to prosecutor's arguments about defendant's behavior off the stand and failure to give curative instruction gave jury incorrect impression that such behavior was evidence and deprived defendant of fair trial). The trial court's ruling permitted the prosecutor to again invoke the authority of the Arizona Supreme Court for the proposition that one convicted of a crime has demonstrated "such a lack of scruples as to show a willingness to give false testimony."

Credibility was a key factor in the defense, and the evidence against defendant was not overwhelming. During the trial, he offered an explanation for his resistance in opening the door, and two officers testified that Detective Upshaw turned the door knob *before* he opened the door and announced his presence. Had the jury considered only the trial court's instruction that a felony conviction "does not necessarily mean that you must disbelieve the defendant," it might have accepted defendant's story that he thought his brother was outside the door and acquitted the defendant.

We conclude, therefore, as did the Arizona Supreme Court in *Neil*, that the prosecutor's closing remarks did not "comport with the spirit of fairness which is one of the most basic tenets of the administration of criminal law." *Neil*, 102 Ariz. at 300, 428 P.2d at 677. The remarks referred to matters outside the record and not admissible in evidence; they effectively created a presumption against the credibility of a convicted felon, a proposition contrary to established law and the instructions given by the trial court. Such remarks may well have confused the jury about the proper standard for determining the credibility of the defendant. We cannot say that without these remarks the jury would have found defendant guilty beyond a reasonable doubt. *State v. McVay*, 127 Ariz. 450, 453, 622 P.2d 9, 12 (1980). *Compare State v. Thomas*, 130 Ariz. 432, 436, 636 P.2d 1214, 1218 (1981) (reversible error to bolster victim's credibility with victim's religious devotion) *with State v. Atwood*, 171 Ariz. 576, 610–11, 832 P.2d 593, 627–28 (1992), *cert. denied*, — U.S. —, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993) (prosecutor's attempts to discredit defense attorney before jury not reversible error where probability of influence on verdict remote). The remarks were not harmless error and thus require reversal.

### CONCLUSION

For the foregoing reasons, the trial court erred in permitting the prosecutor's remarks in closing argument. The remarks took from the defendant the fair trial to

which he was entitled. We reverse the conviction and remand for a new trial.

CLABORNE and FIDEL, JJ., concur.