NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

KELLY COLETTE DONALDSON, *Appellant*.

No. 1 CA-CR 17-0702
FILED 11-29-2018

Appeal from the Superior Court in Maricopa County
No. CR2014-005322-002
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

Janelle A. McEachern, Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge David D. Weinzweig joined.

_____

**S W A N N**, Judge:

¶1   Kelly Colette Donaldson appeals her conviction and probation term for hindering prosecution in the first degree. She contends that there is insufficient evidence to support the conviction. We hold that substantial evidence supports her conviction, and we therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2   Late at night in March 2012, Donaldson and several guests were in the master bedroom of her apartment while her 14-year-old daughter slept in the bedroom across the hall. Donaldson's guests included Abel Hernandez—nicknamed "Stretch"—N.E., R.R., and A.P. Stretch and N.E. began to argue in front of the others when Stretch pulled out multiple guns, set them in front of him, and "play[ed] with them" in an apparent attempt to intimidate N.E. One of the guns fired while Stretch was handling it and the bullet struck A.P. in the head. The other guests left Donaldson's room immediately.

¶3   According to several neighbors and Donaldson's daughter, the gunshot and ensuing commotion occurred sometime between 2:00 and 2:30 a.m. Donaldson, the first to report the incident, called 9-1-1 at 2:47 a.m.

¶4   In the time between the gunshot and the 9-1-1 call, one neighbor heard Donaldson arguing loudly with a man inside the apartment. Donaldson's daughter heard her yell "Stretch" inside the apartment. Another neighbor saw Donaldson and R.R. whispering to each other outside the apartment, with R.R. pacing anxiously and occasionally walking toward the parking lot and back. Donaldson called the police once R.R. left.

¶5   Donaldson told police that she was asleep during the incident and did not know anyone was in the apartment except for her daughter. After police asked her about Stretch, she told them that she knew a man named "Strep" but did not know him well, that "Strep" was under six feet tall, and that he may have tried to get into the apartment through her

bedroom window that night but she did not think he ever got inside. When alone together in a police station holding room, Donaldson's daughter asked her why she yelled "Stretch" during the incident. Donaldson restated the question and warned her daughter not to say anything because the room was being recorded.

¶6        The state charged Donaldson with one count of hindering prosecution in the first degree, a class five felony under A.R.S. § 13-2512. After a jury trial, she was convicted as charged, and the court imposed a three-year probation term with a minimum of 90 days in jail. Donaldson appeals.

## DISCUSSION

¶7        Donaldson presents one issue on appeal—whether there was sufficient evidence to support her conviction. We review the sufficiency of the evidence de novo, *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011), viewing the evidence in the light most favorable to sustaining the verdict, *State v. Girdler*, 138 Ariz. 482, 488 (1983). The credibility of witnesses and the weight given to their testimony are issues for the jury, not this court. *State v. Bustamante*, 229 Ariz. 256, 258, ¶ 5 (App. 2012).

¶8        We will affirm if "substantial evidence" supports the jury's verdict. *State v. Cox*, 217 Ariz. 353, 357, ¶ 22 (2007). "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of [the] defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67 (1990) (citation omitted). "To set aside a jury verdict for insufficient evidence[,] it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987).

¶9        "A person commits hindering prosecution in the first degree if, with the intent to hinder the apprehension, prosecution, conviction or punishment of another for any felony, the person renders assistance to the other person." A.R.S. § 13-2512(A). A person "renders assistance to another" by "knowingly . . . concealing the identity of the other person." A.R.S. § 13-2510(6). "Criminal intent, being a state of mind, is shown by circumstantial evidence. [A d]efendant's conduct and comments are evidence of [her] state of mind." *State v. Bearup*, 221 Ariz. 163, 167, ¶ 16 (2009) (citation omitted).

¶10        As a preliminary matter, the state was required to show that Stretch committed a felony for which Donaldson could have hindered

prosecution. Here, the court instructed the jury on five felonies that Stretch may have committed, including aggravated assault, a class three felony under A.R.S. §§ 13-1203(A)(1) and -1204(A)(2) and (E). The state presented evidence that Stretch committed aggravated assault when he recklessly, knowingly, or intentionally caused the gun to fire in Donaldson's bedroom and the bullet to strike A.P. in the head.

¶11　　　The state presented substantial evidence that Donaldson knew Stretch's identity and knew he caused the gun to fire that night, despite her contrary statements to police. Donaldson's daughter testified that her mother and Stretch were friends. N.E., who was there at the time of the shooting, testified that Stretch was at the apartment that night and had been to the apartment on at least one other occasion. The mutual friend also testified that Donaldson was awake and "kicking back" on her bed while everyone was in her room, and fully aware of what had happened. The evidence that Donaldson yelled "Stretch" in the aftermath of the gunshot, and later tried to conceal that fact, further indicates her awareness of his identity and his actions.

¶12　　　The state also presented sufficient evidence to allow the jury to infer that Donaldson—aware that Stretch had caused the gun to fire in her bedroom—knowingly concealed Stretch's identity from police. According to several neighbors and Donaldson's daughter, the shot was fired sometime between 2:00 and 2:30 a.m. Donaldson did not, however, call the police until 2:47 a.m. The fact that she and R.R. were anxiously whispering outside her apartment shortly after the gunshot but before she called 9-1-1 further permitted the jury to conclude that she strategically delayed calling 9-1-1 to help Stretch escape before police arrived. And when the police asked Donaldson about Stretch, she was evasive. She told them she knew a man named "Strep" but was not friends with him, that he was under six feet tall (whereas other evidence showed that Stretch was well over six feet tall), and that she did not think he was in her apartment that night. Later, when Donaldson and her daughter were waiting in a police station holding room and her daughter asked her why she had yelled "Stretch," Donaldson responded by warning her that the room was being recorded. An inference that Donaldson was trying to hide information from the police could reasonably be drawn from such evidence.

¶13　　　In light of the foregoing evidence that Donaldson knew Stretch's identity and was aware that he had shot A.P., the jury reasonably could have concluded that she knowingly concealed Stretch's identity—she both delayed calling 9-1-1 to help Stretch escape and provided misleading information to police—to hinder the police's apprehension or the state's

prosecution of Stretch. *See* A.R.S. §§ 13-2512(A), -2510(6); *see also State v. Martinez*, 175 Ariz. 114, 117–18 (App. 1993) (holding evidence that defendant closed front door on police while there were drugs in plain sight inside the apartment was sufficient to allow jury to infer that defendant had requisite intent to hinder prosecution of a drug offense).

## CONCLUSION

¶14 We affirm Donaldson's conviction and the court's resulting imposition of probation.



AMY M. WOOD • Clerk of the Court
FILED: AA