466 P.2d 388

**The STATE of Arizona, Appellee,**
**v.**
**Martin Luna GONZALES, Appellant.**
**No. 2018.**

Supreme Court of Arizona,
In Banc.
March 12, 1970.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Asst. Atty. Gen., Phoenix, Robert R. Bean, Pinal County Atty., Patricia Moring, Deputy County Atty., Florence, for appellee.

Leonard N. Sowers, Kearney, for appellant.

HAYS, Justice.

Defendant Martin Gonzales was charged with first degree murder arising out of a 1968 shooting death of one Luis Martinez in Eloy. A jury trial was held in the Pinal County Superior Court at which defendant was found guilty of manslaughter, a lesser included offense, and sentenced by the trial judge to a prison term of not less than five nor more than six years.

After all the evidence had been presented, the trial court instructed the jury concerning the elements of first and second degree murder, *voluntary and involuntary manslaughter,* excusable homicide and self defense. The court further instructed that "the crime of murder in the first degree necessarily includes the lesser offenses of murder in the second degree and manslaughter. Where the crime charged in the information necessarily includes a lesser crime, you may find the defendant guilty of a lesser crime if you believe beyond a reasonable doubt that the evidence shows that the defendant was guilty of such crime." The jury was given four verdict forms and told that they were to return a verdict in one of the four forms. The court directed the jury that "(y)ou may return a verdict of guilty of murder in the first degree and fix the punishment at life imprisonment. You may return a verdict of murder in the second degree. You may return a verdict of manslaughter. And, you may return a verdict of not guilty."

On appeal, defendant contends that the court erred in failing to submit a verdict form on the separate degrees of manslaughter. A.R.S. § 13–457, subsec. A sets the punishment for both voluntary and involuntary manslaughter at imprisonment in the state prison "for not to exceed ten years." However, subsection B of § 13–457 further enumerates that "*(v)oluntary* manslaughter committed by a person armed with a gun or deadly weapon is punishable by imprisonment in the state prison, for the first offense, *for not less than five years* * * *." (Emphasis added.) De-

fendant contends that in this case, where he was clearly armed with a gun, a general verdict of "manslaughter" is insufficient for the imposition of a lawful sentence. The argument is based on the presumption that the trial court, whose duty it was to pronounce sentence, did not have full benefit of the jury's findings of fact. In other words, it is essential to know specifically whether the jury found the defendant guilty of voluntary or involuntary manslaughter, since the commission of voluntary manslaughter by a person armed with a gun carries with it a longer minimum sentence.

The general rule governing this situation is stated in State v. Griffith, 92 Ariz. 273, 376 P.2d 134 (1963):

"Although the law does not make it the duty of the court to submit forms of verdict to the jury, when he does do so, he should give a form of every kind of a verdict that may possibly be returned by the jury. * * * However, before a failure to do so may be made the basis of reversible error, it must appear that the omission prejudiced in some way the rights of the defendant * * *." 92 Ariz. at 275, 376 P.2d at 135.

If, in fact, the jury found defendant guilty of involuntary manslaughter, then defendant is not subject to the five year mandatory minimum sentence required in the voluntary manslaughter situation where a gun has been used. But it is unclear whether the trial court, in pronouncing sentence, was considering the mandatory five year minimum when it sentenced defendant to a term of five to six years. It may well be that the court would have entered the same sentence regardless of the degree of manslaughter found. The fact is absolutely clear, however, that the court did not base its sentence on the specific degree of manslaughter because the verdict as returned did not provide the court with such information.

We hold that defendant's sentence was unlawfully pronounced. However, absent any fundamental error committed during the trial below, we feel that

the trial court's omission of the degrees of manslaughter from the verdict forms submitted to the jury does not warrant the granting of a new trial. The jury was permitted to consider all of the evidence, and was properly instructed as to the elements of the various types of homicide, including the distinction between voluntary and involuntary manslaughter. The jury's verdict was deficient only in that it failed to specify the degree of manslaughter found. We believe that where there is doubt as to the degree of the offense of which the defendant was found guilty, the defendant should be deemed convicted of the lesser degree. A criminal defendant is always entitled to any reasonable doubt in his favor, and we hold that the jury found defendant guilty of involuntary manslaughter.

Defendant also urges that prejudicial error was committed during the trial below, contending that remarks made by the prosecutor during closing argument were so inflammatory to the jury as to require reversal.

The prosecutor's remarks were, to say the least, improper. He accused defense counsel of talking "out of two sides of his mouth, or as the Indian might say a forked tongue." He referred to one of the defendant's chief witnesses as a "liar," and called her testimony "dishonest." Reference was made to defense counsel as a "poor, humble, simple little fellow," who was playing games with the jury. The prosecutor made several references to the bible, religion and races. Possibly his most callous remarks were directed to the function of the jury: "Let's quote the bible and be generous. Let's go out here 400 yards and open the gates and let him out. And when somebody comes along and kills you and they ask the County Attorney, 'What kind of a job are you doing over there?'—I won't have the job then—but as County Attorney, I will tell the survivors, 'Well, we have got kind hearts. We don't prosecute anybody.' "

Our law permits trial counsel wide latitude in presenting closing argu-

ments to the jury. State v. Robison, 99 Ariz. 241, 408 P.2d 29 (1965). This is because closing arguments are not evidentiary in nature; at such arguments counsel are permitted to comment on the evidence already introduced and to argue reasonable inferences therefrom. State v. Propp, 104 Ariz. 466, 455 P.2d 263 (1969). In the closing argument, excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury.

In Sullivan v. State, 47 Ariz. 224, 55 P.2d 312 (1936), we set forth the general criteria for determining whether an attorney's closing remarks are unduly prejudicial:

"The best rule for determining whether remarks made by counsel in criminal cases are so objectionable as to cause a reversal of the case is, Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by those remarks." 47 Ariz. at 238, 55 P.2d at 317.

And in State v. Merryman, 79 Ariz. 73, 283 P.2d 239 (1955), we stated that:

"* * * whether or not improper argument in a criminal case has influenced the verdict must be left to the sound discretion of the trial court on motion for a new trial. * * * If there has been no abuse of that discretion and it appears that substantial justice has been done the court will not reverse the judgment. * * * Counsel should always confine their argument to the pertinent law and facts of the case. The trial court in the instant case instructed the jury to disregard counsel's remarks and we believe properly denied defendant's motion for a mistrial. While the remarks were improper we see nothing in them calculated to inflame the minds of the jurors with

passion or prejudice or influence the verdict in any degree." 79 Ariz. at 74–75, 283 P.2d at 241.

Despite the impropriety of the prosecutor's remarks, we do not find them so inflammatory, offensive and prejudicial as to require a reversal.

Our refusal to reverse because of the prosecutor's remarks is further supported by defense counsel's failure to object to the remarks at the time they were made. We discussed the failure to object to such remarks in State v. Boozer, 80 Ariz. 8, 291 P.2d 786 (1955):

"* * * it is the universal rule that if improper statements are made by counsel during the trial it is the duty of opposing counsel to register an objection thereto so that the court may make a correction by proper instruction and, if the offense be sufficiently hurtful, declare a mistrial." 80 Ariz. at 13, 291 P.2d at 789.

Defense counsel waited until after the closing arguments were concluded and after the trial court had instructed the jury before he objected to the prosecution's remarks and moved for mistrial. The trial court had already given the following cautionary instruction to the jury:

"Arguments and comments of counsel are intended to help you in understanding the evidence and applying the law. While arguments are not evidence, counsel may argue reasonable inferences from the evidence. If any comment of counsel has no basis in the evidence, you are to disregard that comment."

The trial court did not abuse its discretion in denying defendant's motion for mistrial.

The conviction for manslaughter is affirmed. The sentence imposed by the trial court is set aside, and the case is remanded to the trial court for resentencing, based upon the lesser offense of involuntary manslaughter.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ.