566 P.2d 303

**STATE of Arizona, Appellee,**

v.

**Michael Lester MEANS, Appellant.**

**No. 3583.**

Supreme Court of Arizona,
En Banc.

June 9, 1977.

sion and eating snacks. No harsh words were exchanged between appellant and the man, although the situation was awkward for all. Appellant stayed only a few minutes.

After he left, appellant testified, he drove around for thirty or forty minutes, drinking beer and thinking about his relationship with Jackie and about what the other man was doing at her home.

The evidence shows that he returned to Jackie's home at this point, took from his glove compartment the revolver he always carried there, and either met her out front or asked her to step outside to talk with him. Thereafter, several shots were heard by neighbors who looked out their windows, saw appellant walk to his car and drive away in a normal manner. Jackie Means was discovered by one of these neighbors immediately afterward, shot four times. Another bullet was found in the fence behind her.

Appellant admitted the shooting. His defense was that it was done in the heat of passion, *i. e.,* that his crime was manslaughter, not murder. The jury was instructed by the court on murder in the first and second degrees and voluntary manslaughter.

Two issues are raised on appeal:

(1) Did the trial court err in prohibiting certain expert testimony?

(2) Did the trial court err in denying appellant a new trial?

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Charles L. Weninger, Asst. Public Defender, Tucson, for appellant.

HAYS, Justice.

Michael Lester Means, hereinafter appellant, was convicted by a jury of murder in the first degree. A motion for a new trial was denied. He was sentenced thereafter to life imprisonment without possibility of parole for twenty-five years. We have jurisdiction of his appeal from the judgment and sentence by virtue of A.R.S. §§ 13–1711 and 12–120.21(A)(1). Appellant and Jackie Means, the victim of the killing, had been twice married and divorced. Subsequent to their second divorce they continued to live together on and off. They had separated again a short time before this incident, and Jackie was living, with the couple's three minor children, in a small house next to her parents' residence.

On November 28, 1975, appellant spent a large part of the day drinking alcoholic beverages with some friends at numerous bars and a few private homes in Tucson, Arizona. He left those friends at about 7:30 P.M. After going home and exchanging his motorcycle for his car because of inclement weather, appellant drove to Jackie's home. He found her there, with the three children and a man with whom she worked. There was nothing untoward about the situation in which he found his ex-wife. Both she and her male friend were fully dressed, the three children were present, and they were all watching television

## EXPERT TESTIMONY

In support of his "heat of passion" defense, appellant sought to persuade the jury that his level of intoxication was so high that it affected his ability to form the specific intent necessary to commit murder in the first degree.[1] In Arizona, voluntary intoxication is not a defense to a crime, but

---

1. A.R.S. § 13–132 provides: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition, but when the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive or intent with which he committed the act."

evidence thereof is admissible to show lack of specific intent. *State v. Cooper,* 111 Ariz. 332, 529 P.2d 231 (1974). It is, also, strictly a question for the jury as to whether the intoxication has negated the malice required in murder and which differentiates murder and manslaughter. *State v. Duke,* 110 Ariz. 320, 518 P.2d 570 (1974).

Appellant also sought to use the intoxication argument with regard to the jury's determination as to whether appellant was actually provoked into a "heat of passion."

The admission of expert testimony is a question within the sound discretion of the trial court and will not be altered absent a showing of prejudicial abuse. *State v. Kevil,* 111 Ariz. 240, 527 P.2d 285 (1974).

In this case, appellant offered the testimony of Dr. Cleamond Eskelson, a research biochemist and Ph.D. who had researched the biological effects of alcohol and conducted group therapy sessions for alcoholics, among his other credentials. He was allowed to testify to the scientific method of predicting blood alcohol levels at certain times, the absorption rate of alcohol, and what appellant's blood alcohol level might have been at the time of the shooting. He was also allowed to testify to the statutory presumptions in Arizona regarding driving while intoxicated, that appellant was well above the presumptive level, and to the increased ability of alcoholics to "handle" alcohol. However, in the belief that defense counsel was going to ask Dr. Eskelson to form an opinion with regard to appellant's specific intent, forbidden by *State v. Briggs,* 112 Ariz. 379, 542 P.2d 804 (1974), the trial court granted a state's motion in limine to preclude the doctor from testifying to the effects of alcohol on the body.

We think the trial court properly excluded that testimony, but for a different reason. With regard to the subject matter of expert testimony, we have recently said, "The primary consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that people of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." *State v. Owens,* 112 Ariz. 223, 227, 540 P.2d 695, 699 (1975).

An offer of proof was made by the defense; the doctor was examined and cross-examined in the absence of the jury. His testimony consisted of statements such as, alcohol causes the brain's "social restraint centers . . . [to be] . . . inhibited," that "alcohol . . . [has] . . a dual effect with anger" and "the alcoholic . . . [tends to operate] . . . on an emotional rather than on a . . . thinking level." Although defense counsel strenuously argued that the chemical effects of alcohol are not common knowledge, it is clear from the offer of proof that the ultimate result of the doctor's testimony was going to be the observation that alcohol affects human behavior, sometimes very adversely.

This, we think, is a matter of common experience and knowledge, and clearly "an area where the jury could . . . intelligently determine the issue . . . based on their own ordinary judgment and practical experience". *State v. Knapp,* 114 Ariz. 531, 541, 562 P.2d 704, 714 (1977). There was no need for the expert to assist the triers of fact on this issue. It follows, therefore, that there was no prejudicial error in precluding this expert testimony, whatever the trial court's rationale.

## DENIAL OF NEW TRIAL

The second contention with which we are concerned is that the trial court should have granted appellant's motion for a new trial, based on prosecutorial misconduct, *i. e.,* prejudicial remarks by the prosecutor during closing arguments.

■ The first objectionable statement by the prosecutor is said by appellant to have been an expression of his opinion and misstatement of the law regarding intoxication and intent. We agree. The following occurred during the prosecutor's closing argument:

PROSECUTOR: . . . .

"I'll draw an analogy. You would have to be so intoxicated, ladies and gentlemen, that when you pick up a glass to have a drink you didn't intend to pick that glass up.

DEFENSE COUNSEL: "Your honor, that is objectionable as a misstatement of the law.

. . . . .

COURT: . . . [O]verruled. You may continue. . . .

PROSECUTOR: "For him to be so intoxicated that he did not deliberate, that he did not have the willfullness [sic], malice or premeditation is the same as somebody getting in a car and not intending to drive the car. To be so intoxicated it would lower the crime, it would be for him not to know where he was, where he was going or what he had done.

DEFENSE COUNSEL: ". . . I'm going to object. This is totally against the law, a misstatement of the law, and that is not what the law says.

COURT: "I think . . . ladies and gentlemen of the jury, that this is counsel's argument and counsel is stating his opinion with regard to the facts and is not arguing the law to the jury. The Court is going to instruct the jury on the law and you will not find in the instructions anything like what counsel is arguing. But I think it is permissible argument. You may proceed."

The prosecutor proceeded, but said no more about intent and intoxication in that vein.

Unlike the trial court, we think the prosecutor's remarks were, indeed, erroneous statements regarding the law of intoxica-

tion and intent, and it is improper for an attorney to misstate the law in his arguments to the jury. *State v. Daymus,* 90 Ariz. 294, 367 P.2d 647 (1961). Such misstatements, however, are not always prejudicial. *State v. Daymus, supra. Accord, People v. Sampsell,* 34 Cal.2d 757, 214 P.2d 813 (1950), *cert. denied,* 339 U.S. 990, 70 S.Ct. 1016, 94 L.Ed. 1391 (1950); *State v. Harris,* 290 N.C. 681, 228 S.E.2d 437 (1976).

In this case, although the court classified it as "permissible argument," it did point out to the jury that the court would instruct the jury on the law and that they would not find "anything like" the prosecutor's argument therein. The court did, thereafter, properly instruct the jury as to the law in Arizona regarding intoxication and intent, as well as the elements of wilfulness, deliberation and premeditation.[2]

". . . [W]hether or not improper argument in a criminal case has influenced the verdict must be left to the sound discretion of the trial court on motion for a new trial. . . . If there has been no abuse of that discretion and it appears that substantial justice has been done the court will not reverse the judgment." *State v. Gonzales,* 105 Ariz. 434, 437, 466 P.2d 388, 391 (1970), citing *State v. Merryman,* 79 Ariz. 73, 283 P.2d 239 (1955).

In light of the court's corrective remark and instructions, we cannot say the trial court abused its discretion in refusing to grant a new trial because of this improper argument.

■ The second statement by the prosecutor challenged herein was with regard to testimony by Carrie Means, the young daughter of Jackie and appellant, who

2. One instruction given was virtually identical to the statute quoted in note 1, A.R.S. § 13–132. The second instruction read: " 'Voluntary intoxication may not only negate the defendant's ability to premeditate and deliberate, but also may produce a state of mind which would negate the malice aforethought necessary for murder. As such, voluntary intoxication may reduce murder to manslaughter. Voluntary intoxication may reduce murder to manslaughter even in the total absence of evidence of 'heat of passion.' "

The instructions regarding murder, first degree read, in pertinent part: ". . . All murder which is perpetrated by a willful, deliberate or premeditated killing is murder of the first degree. All other kinds of murder are of the second degree. 'Willful' means intentional. 'Deliberate' means decided as the result of careful thought. 'Premeditated' means resolved in the mind beforehand. The intent to kill must be the result of deliberate premeditation. . . ."

heard the shots and her mother call to her to get her grandmother, and then observed her slain mother in the front yard. The remarks were:

"She has to live with the fact that she saw her mother there for the rest of her life. Her mother was shot to death. That's going to stay with her for the rest of her life."

No objection was interposed by defense counsel. Absent fundamental error, failure to object to such comments is a waiver of review on appeal. *State v. Boag,* 104 Ariz. 362, 453 P.2d 508 (1969); *State v. Owens, supra.*

The next challenged statement was:

"It is easy to become emotional over this case. It's easy to see people's mothers come in and testify. Easy to see the hurt on their faces.

"It's easy to see little children come in and testify. Easy to think about what that might . . . do to them for the rest of their lives."

At this point, defense counsel objected. What follows, we believe, obviates any possible error.

COURT: "As to what it may do to them for the rest of their lives, the jury is not concerned with that. Proceed.

PROSECUTOR: "Those are emotions. You will be instructed from the judge to consider the case without your emotions.

"Go in there and listen to the facts. Discuss the facts. Try not to let emotions override your judgment. . ."

There was no abuse of discretion in failing to grant a new trial for this series of remarks, either.

Judgment of conviction and sentence affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.