NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JAMES BRIAN KUMMER, *Appellant*.

No. 1 CA-CR 13-0739
FILED 2-3-2015

Appeal from the Superior Court in Maricopa County
No. CR2010-006269-001
The Honorable Warren J. Granville, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry Reid
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Michael J. Brown joined.

**J O N E S**, Judge:

¶1 James Kummer appeals his convictions and sentences for burglary in the first degree, kidnapping, violent sexual assault, attempted sexual assault, and assault. Kummer's defense counsel has searched the record on appeal and asserts having found no arguable question of law that is not frivolous. Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), defense counsel asks this Court to search the record for fundamental error. Kummer was granted an opportunity to file a supplemental brief *in propria persona*, which he elected to do. After reviewing the record, and examining the issues raised by Kummer within his supplemental brief, we find no reversible error. Accordingly, Kummer's convictions and sentences are affirmed.

## FACTS[1] AND PROCECDURAL HISTORY

¶2 On June 23, 2007, at approximately 6:30 a.m., S.P.L. was alone in her apartment and getting ready for work. She was suddenly overcome by a feeling she was no longer alone, and stepped out of the bathroom to find a man standing in her living room. The man was wearing a black ski-mask that covered his entire face and attempting to put on gloves. Upon seeing S.P.L., the man dropped his gloves, picked up a gun he had placed on a sofa, gestured to S.P.L. to remain quiet, and told her "no hurt" in Spanish. He then grabbed her, tied her hands behind her back with plastic zip-ties, and wrapped masking tape over her eyes and mouth.

¶3 The man then led S.P.L. into an adjoining bedroom, where he closed and locked the door. Once in the room, the man tore her clothing and fondled her breasts. The man also attempted to remove S.P.L.'s pants, but she successfully resisted. After struggling for approximately 10 to 15 minutes, S.P.L. was able to remove the tape from her mouth and scream for help. In an attempt to silence S.P.L., the man shoved the tape into her mouth.

¶4 By that time, S.P.L.'s screaming had alerted her neighbor, who came to S.P.L.'s bedroom window to investigate. Apparently aware other people were present, the man struck S.P.L. on the forehead with his gun,

---

[1] "We view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the jury's verdicts." *State v. Miles*, 211 Ariz. 475, 476, ¶ 2, 123 P.3d 669, 670 (App. 2005) (citing *State v. Riley*, 196 Ariz. 40, 42, ¶ 2, 992 P.2d 1135, 1137 (App. 1999)).

which caused a laceration and rendered her unconscious, and left the apartment. After regaining consciousness, S.P.L. managed to escape her locked apartment with her hands still tied behind her back and went to her neighbor's apartment, where she called the police. Phoenix Police responded, eventually escorting S.P.L. back to her apartment to retrieve a shirt, at which time she noticed her purse, containing a bottle of water, her identification, and about $150, was missing.

¶5        In the course of the investigation, multiple items were taken into custody by Phoenix Police, including the gloves and zip-ties left at the apartment and the tape that had been wrapped around S.P.L.'s head. Subsequent testing showed DNA collected from the left glove matched Kummer, and DNA collected from the right glove and tape was consistent with Kummer's DNA profile. It was later discovered that Kummer's girlfriend at the time of the attack lived in the same apartment complex.

¶6        Kummer was ultimately indicted on one count of burglary in the first degree (Count 1), one count of kidnapping (Count 2), one count of violent sexual assault (Count 3), one count of attempted sexual assault (Count 4), one count of aggravated assault (Count 5), and one count of armed robbery (Count 6).

¶7        Prior to trial, the State sought to admit evidence of a 1992 sexual assault against L.R., to which Kummer pleaded guilty, toward demonstrating Kummer "had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Ariz. R. Evid. 404(c). Following oral argument,[2] the trial court found the requirements of Rule 404(c) had been satisfied, and allowed the State to offer the evidence at trial.

¶8        Following a thirteen-day trial, a jury found Kummer guilty of Counts 1 through 4 as charged, and of the lesser included offense of assault on Count 5. The jury was unable to reach a verdict on Count 6, which was subsequently dismissed.

¶9        At sentencing, Kummer admitted to three prior felony convictions. The State also alleged three aggravating factors — emotional harm, physical harm and use of a deadly weapon. Kummer waived his right to have the aggravating factors tried to a jury, and the trial court found

---

[2]        Kummer complains he was not present at this oral argument. However, the record demonstrates Kummer had waived his presence for the 404(c) hearing, and, as a result of his waiver, he was not transported to the hearing.

the State had proven the emotional harm factor beyond a reasonable doubt and concluded the jury's verdicts on Counts 1 through 3 necessarily showed Kummer used a gun in the commission of the crimes. Accordingly, Kummer was sentenced to a presumptive term of 15.75 years' imprisonment on Count 1, an aggravated term of 20 years' imprisonment on Count 2, the statutorily required imprisonment term of natural life without the possibility of parole for 25 years on Count 3, a presumptive term of 11.25 years' imprisonment on Count 4, and a presumptive term of six months on Count 5. The sentences were set to run consecutively, except for Count 4, which was set to run concurrently with Count 2, and Count 5, which was set to run concurrently with Count 1. The trial court awarded Kummer 1,077 days of presentence incarceration credit on Counts 1 and 5.

## DISCUSSION

### I. Opening Brief

¶10 Although defense counsel asserted he found no arguable question of law that is not frivolous, the opening brief hints at possible error surrounding Kummer's waiver of his right to have the jury determine whether aggravating circumstances existed, and his admission of prior felony convictions. Given the purpose of *Anders* appeals, we address counsel's implicit concerns. *See State v. Clark*, 196 Ariz. 530, 535-36, ¶¶ 22-24, 2 P.3d 89, 94-95 (App. 1999) (discussing proper method to achieve purpose of *Anders* appeal — to ensure indigent defendants receive equal and effective counsel in identifying arguable issues for appeal) (citing *Penson v. Ohio*, 488 U.S. 75, 81-83 (1988)). As Kummer did not object to these proceedings below, our review is for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 22, 115 P.3d 601, 608 (2005). Under this standard, any error must be fundamental and have caused Kummer prejudice. *State v. James*, 231 Ariz. 490, 493, ¶ 11, 297 P.3d 182, 185 (App. 2013) (quotations and citations omitted).

### A. Waiver of Jury Trial on Aggravating Circumstances

¶11 With regard to waiver, the opening brief states that "[o]ther than his right to a jury determination of the facts beyond a reasonable doubt, [Kummer] was not advised of his constitutional rights." A defendant has the constitutional right to have "any fact that increases the penalty for a crime beyond the prescribed statutory maximum," including allegations of aggravating circumstances, "'submitted to a jury, and proved beyond a reasonable doubt.'" *See State v. Brown*, 212 Ariz. 225, 229, ¶ 19, 129 P.3d 947, 951 (2006) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490

(2000)). A defendant may choose to waive this right, but may only do so "with consent of the prosecution and the court." Ariz. R. Crim. P. 18.1(b); *see also* Ariz. Rev. Stat. (A.R.S.) § 13-3983;[3] *State v. Durham*, 111 Ariz. 19, 20, 523 P.2d 47, 48 (1974). Prior to accepting a waiver, the trial court must "address the defendant personally, advise the defendant of the right to a jury trial and ascertain that the waiver is knowing, voluntary, and intelligent." Ariz. R. Crim. P. 18.1(b)(1); *State v. Baker*, 217 Ariz. 118, 120, ¶ 8, 170 P.3d 727, 729 (App. 2007). "The pivotal consideration in determining the validity of a jury trial waiver is the requirement that the defendant understand that the facts of the case will be determined by a judge and not a jury." *State v. Conroy*, 168 Ariz. 373, 376, 814 P.2d 330, 333 (1991) (citations omitted).

**¶12** The record reflects Kummer was advised by the trial court of his right to have the alleged aggravating circumstances submitted to a jury, and that the allegations would have to be found beyond a reasonable doubt. Additionally, the court explained to Kummer the sentencing consequences that may result if the allegations were proven. After being advised, Kummer indicated he understood the ramifications, but wished for the court to make the decision. In response to further questioning by the court, Kummer denied: (1) taking any medicine, drugs, or alcohol within the preceding 24 hours, (2) being promised anything in exchange for his waiver, or (3) being threatened into waiving his right. Kummer also stated he had sufficiently discussed his decision with defense counsel. Given this colloquy, the court found Kummer's waiver was knowing, intelligent and voluntary.

**¶13** Kummer was advised of his right to a jury trial, the burden of proof, and the sentencing consequences of an affirmative finding. The trial court also specifically explained that his waiver would enable the court to make the findings rather than requiring a consensus of the 12-person jury. On this record, we find no error, fundamental or otherwise, in the trial court's acceptance of Kummer's waiver of his right to a jury determination of the allegations of aggravating circumstances.

### B. Admission of Prior Felony Convictions

**¶14** The opening brief also implies the trial court erred in accepting Kummer's admission of three prior felony convictions without conducting a complete colloquy as required by Arizona Rule of Criminal

---

[3] Absent material revisions since the relevant date, we cite to a statute's current version.

Procedure 17. Specifically, the brief asserts Kummer was not advised of his "constitutional right[] to a trial on the prior convictions."

**¶15**        Arizona Rule of Criminal Procedure 17.6 makes Rule 17's colloquy requirement for accepting plea agreements applicable to admissions of prior convictions. The purpose of the Rule 17 colloquy is to ensure a defendant's admission of prior convictions is voluntary and intelligent. *See* Ariz. R. Crim. P. 17.1(b); *State v. Morales*, 215 Ariz. 59, 60, ¶ 1, 157 P.3d 479, 480 (2007) (citing Ariz. R. Crim. P. 17.2, 17.3). Prior to accepting a plea, the trial court must advise the defendant of his rights and of the consequences of his guilty plea. Ariz. R. Crim. P. 17.2(a)-(f). The court must also determine the defendant wishes to forego his or her constitutional rights and the admission "is made voluntarily and not the result of force, threats or promises." Ariz. R. Crim. P. 17.3.

**¶16**        Here, the Rule 17 colloquy was incomplete. Although the admission came after the State began presenting evidence regarding Kummer's prior convictions, the trial court did not specifically advise Kummer of his right to require the State to prove them. *See* Ariz. R. Crim. P. 17.2(c), 17.6; *State v. Anderson*, 199 Ariz. 187, 194, ¶ 36, 16 P.3d 214, 221 (App. 2000) ("[A] trial court must advise the defendant of . . . the defendant's right to proceed to trial and require the State to prove the allegation.") (citing *State v. Stuart*, 168 Ariz. 83, 87, 911 P.2d 335, 339 (App. 1990), and Ariz. R. Crim. P. 17.2, 17.6). The failure to provide a complete Rule 17.6 colloquy prior to accepting an admission of prior convictions is fundamental error. *See State v. Geeslin*, 221 Ariz. 574, 578, ¶ 14, 212 P.3d 912, 916 (App. 2009) (citing *Morales*, 215 Ariz. at 61, ¶ 10, 157 P.3d at 481, and *State v. Thues*, 203 Ariz. 339, 340, ¶ 4, 54 P.3d 368, 369 (App. 2002)), *vacated in part on other grounds*, 223 Ariz. 533, 225 P.3d 1129 (2010).

**¶17**        But that does not end our analysis. *Morales*, 215 Ariz. at 62, ¶ 11, 157 P.3d at 482 ("The absence of a Rule 17.6 colloquy, however, does not automatically entitle a defendant to a resentencing."). Rather, a defendant must also show he was prejudiced by the error. *Id.* "[P]rejudice generally must be established by showing that the defendant would not have admitted the fact of the prior conviction had the colloquy been given." *Id.* (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

**¶18**        This Court has held "that an unobjected-to presentence report showing a prior conviction to which the defendant stipulated without the benefit of a Rule 17.6 colloquy conclusively precludes prejudice and a remand . . . ." *State v. Gonzales*, 233 Ariz. 455, 458, ¶ 11, 314 P.3d 582, 585 (App. 2013). Here, the presentence report contained the three prior felony

convictions admitted to by Kummer and listed in the sentencing minute entry. Kummer did not object to the accuracy of the sentencing report's summary of his criminal history, or seek to rebut or correct the report. *See id.* (citing *State v. Walden*, 126 Ariz. 333, 336, 615 P.2d 11, 14 (App. 1980), and *State v. Nichols*, 24 Ariz. App. 329, 330, 538 P.2d 416, 417 (1975)). Given this, Kummer was not prejudiced by the failure to conduct a complete colloquy. *Id.* at ¶ 12 (holding combination of criminal history set forth in presentence report and subsequent stipulation to same crimes was sufficient to establish lack of prejudice in failure to conduct colloquy) (citations omitted). Therefore, the lack of a complete colloquy, in this instance, did not amount to fundamental error requiring resentencing.

## II. Supplemental Brief

**¶19**        Although his arguments are somewhat unclear, Kummer raises the following issues in his supplemental brief: (1) the trial court erred by allowing the State to introduce evidence of the 1992 sexual assault pursuant to Arizona Rule of Evidence 404(c); (2) he was deprived a fair trial by virtue of prosecutorial misconduct; and (3) the trial court abused its discretion in the sentences imposed.[4] We address each in turn.

### A. Evidence of the 1992 Sexual Assault

**¶20**        At trial, L.R. testified Kummer sexually assaulted her in 1992, in her apartment, in the middle of the night, while alone with her baby. Kummer argues error by the trial court in the admission of this testimony under Rule 404(c) to establish an "aberrant sexual propensity" to commit the offenses charged. We review the admission of sexual propensity evidence for an abuse of discretion. *State v. Garcia*, 200 Ariz. 471, 475, ¶ 25,

---

[4]        Kummer also raises concerns regarding ineffective assistance of counsel. While recognizing such a claim is inappropriate for direct appeal, *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9, 39 P.3d 525, 527 (2002) (holding "ineffective assistance of counsel claims are to be brought in Rule 32 proceedings"), Kummer raises various related issues, such as counsel's failure to test evidence, object to examination questions, and highlight allegedly inconsistent testimony, because "the collective contribution of [defense counsel's] errors and inadequacies throughout the history of these proceedings . . . greatly contributed to the prosecutorial misconduct to go unopposed or to argue against the judicial error as it occurred." To the extent Kummer's arguments throughout can be construed as raising a claim of ineffective assistance of counsel, we do not address those concerns here. *Id.*

28 P.3d 327, 331 (App. 2001) (citing *State v. Vigil*, 195 Ariz. 189, 191, ¶ 13, 986 P.2d 222, 224 (App. 1999)).

**¶21** "Generally, evidence of other wrongs may not be used 'to show that a defendant is a bad person or has a propensity for committing crimes.'" *State v. Roque*, 213 Ariz. 193, 211, ¶ 54, 141 P.3d 368, 386 (2006) (quoting *State v. Amarillas*, 141 Ariz. 620, 622, 688 P.2d 628, 630 (1984), and citing Ariz. R. Evid. 404(b)). An exception to this general rule has been carved out in Rule 404(c), which "permits the admission of evidence of [another crime, wrong, or act] to establish 'that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged.'" *Garcia*, 200 Ariz. at 475, ¶ 26, 28 P.3d at 331 (quoting Ariz. R. Evid. 404(c)).

**¶22** Before the trial court may admit evidence of another crime, wrong, or act, it must specifically find:

> (A) The evidence is sufficient to permit the trier of fact to find that the defendant committed the other act.
>
> (B) The commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged.
>
> (C) The evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403.

Ariz. R. Evid. 404(c)(1). Here, the trial court allowed the testimony pursuant to Rule 404(c) after considering the parties' motions, conducting oral argument, and reviewing a psychologist's report. It made specific findings with respect to each factor before admitting L.R.'s testimony, in compliance with *State v. Aguilar*, 209 Ariz. 40, 49, ¶¶ 30-31, 97 P.3d 865, 874 (2004), and Rule 404(c)(1)(D), and the record supports those findings.

**¶23** Under Rule 404(c)(1)(A), the State must prove by clear and convincing evidence that the defendant committed the other act. *State v. Terrazas*, 189 Ariz. 580, 584, 944 P.2d 1194, 1198 (1997). Here, Kummer pleaded guilty to the 1992 sexual assault. His conviction of the prior sexual assault is sufficient to allow the trier of fact to conclude he committed that act. *State v. Dixon*, 226 Ariz. 545, 550, ¶ 14, 250 P.3d 1174, 1179 (2011). The trial court did not err in determining the first prong was satisfied.

¶24　　　The record also supports the trial court's conclusion that evidence of the prior offense provided a reasonable basis to infer Kummer has a character trait giving rise to an aberrant sexual propensity to commit sexual assault against non-consenting adult females.[5] *See* Ariz. R. Evid. 404(c)(1)(B). A psychologist submitted a report to the trial court detailing the similarities between the two assaults, and opined "the commission of the other act in 1992 provide[d] a reasonable basis to infer" Kummer possessed an aberrant sexual propensity to commit the crimes charged in 2007. As the court noted, both assaults involved the issue of control and power, as the assailant over-powered both victims against their will, prevented their escape, and took measures to keep the victims from alerting help. In neither case did Kummer have an emotional relationship with the victims prior to the assault. Given "the expert testimony and the substantial similarities between the two crimes," the court did not abuse its discretion in determining this prong had been satisfied. *Dixon*, 226 Ariz. at 550, ¶ 15, 250 P.3d at 1179 (citing Ariz. R. Evid. 404(c)(1)(B), cmt. to 1997 amend. in approving finding of a reasonable basis based upon "expert testimony" or other facts).

¶25　　　Lastly, the trial court did not abuse its discretion in concluding that Rule 404(c)(1)(C) was likewise satisfied. Under this prong, the court must determine whether the evidentiary value of the other act is substantially outweighed by the danger of unfair prejudice to the defendant. Ariz. R. Evid. 404(c)(1)(C). In performing this task, the court must consider several factors, including the remoteness of the other act, similarities or dissimilarities between the prior and present acts, the strength of the evidence that defendant committed the other act, the frequency of any other acts, the surrounding circumstances and relevant intervening events, and any other relevant factors. Ariz. R. Evid. 404(c)(1)(C)(i)-(viii).

---

[5]　　　Kummer contends that one prior act is insufficient to show a character trait. First, Rule 404(c) is phrased in singular form. Rule 404(c)(1) ("The court shall admit evidence of the other *act* . . . .") (emphasis added). Second, under Rule 404(c), evidence of the prior act is admissible only if its commission provides "a reasonable basis to infer" the defendant has a character trait. Ariz. R. Evid. 404(c)(1)(B). Thus, while Kummer may be correct that a single prior act does not necessarily prove a character trait, it remains admissible, relevant evidence from which a jury may properly infer the existence of a character trait in the defendant giving rise to an aberrant sexual propensity to commit a specific sexual offense.

¶26            The record reflects the trial court carefully analyzed these factors.  Although noting the incidents took place fifteen years apart, the court determined the acts were not too remote in light of the fact that Kummer had been incarcerated for eight of those years.  *See State v. Bible*, 175 Ariz. 549, 575, 858 P.2d 1152, 1178 (1993) (excluding jail time in calculation of remoteness).  There is not a "bright line test of remoteness or similarity."  Ariz. R. Evid. 404(c)(1)(C), cmt. to 1997 amend.   And the remoteness of an act "generally does not determine its admissibility," but rather goes to the weight of the evidence.  *Bible*, 175 Ariz. at 576, 858 P.2d at 1179 ("Are the two crimes so similar, unusual, and distinctive that the trial judge could reasonably find that they bear the same signature?  If so, the evidence may be admissible and any dissimilarities go to its weight.") (citing *State v. Roscoe*, 145 Ariz. 212, 217-18, 700 P.2d 1312, 1317-18 (1984)).  Indeed, we have affirmed admission of prior acts even more remote than the seven years found here.  *See, e.g., State v. Salazar*, 181 Ariz. 87, 92 n.5, 887 P.2d 617, 622 n.5 (App. 1994) (approving admission of evidence of uncharged rape that occurred twenty years prior to the charged offense with appropriate restraints); *State v. Weatherbee*, 158 Ariz. 303, 304-05, 762 P.2d 590, 591-92 (App. 1988) (allowing evidence regarding prior acts of child molestation that occurred nineteen to twenty-two years prior to the charged offense).

¶27            The trial court also considered the similarities between the assaults.  In both, the assailant entered the apartments without a forceful entry — once with a key and once by finding the door unlocked — and exhibited a certain amount of planning in both assaults, entering in the early morning hours when the victims were alone.  Both victims were twenty years old and had similar physical characteristics, such as height and weight, and hair and eye color.  They both had their clothes forcibly torn off and were prevented from screaming by both physical and psychological means.  In addition, Kummer had developed a familiarity with the locations where the assaults occurred: he lived in the same apartment complex as L.R., and his girlfriend lived in the same apartment complex as S.P.L.

¶28            Differences do exist between the two crimes.  Most notably, the 2007 sexual assault illustrated an increased level of planning through use of a weapon, concealment of identity with a ski-mask, and use of items to help restrain the victim.  However, that the second act involved a higher level of planning than the first is not so significant as to preclude the admission of the evidence.  *See Roscoe*, 145 Ariz. at 218, 700 P.2d at 1318 ("Absolute identity in every detail cannot be expected.   Where an overwhelming number of significant similarities exist, the evidence of the prior act may be admitted.").  Given the totality of the circumstances and

the similarities between the two offenses, we cannot say the trial court abused its discretion in admitting the testimony regarding the 1992 sexual assault under Rule 404(c).

## B.    Prosecutorial Misconduct

**¶29**    Kummer identifies numerous instances during the trial and sentencing proceedings he believes support a claim for prosecutorial misconduct. Specifically, he argues the prosecutor improperly coached witnesses, made incorrect remarks about the evidence during closing argument, and "invent[ed] testimony" at sentencing "to influence and confuse the sentencing judge."

**¶30**    "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26, 969 P.2d 1184, 1191 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To obtain a reversal on this basis, the misconduct must be "'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Roque*, 213 Ariz. at 228, ¶ 152, 141 P.3d at 403 (quoting *Hughes*, 193 Ariz. at 79, ¶ 26, 969 P.2d at 1191). When evaluating whether the "misconduct permeate[d] the entire atmosphere of the trial, the court necessarily has to recognize the cumulative effect of the misconduct." *Hughes*, 193 Ariz. at 79, ¶ 26, 969 P.2d at 1191. Again, because Kummer did not object to these statements at trial, our review is for fundamental error. *State v. Ramos*, 235 Ariz. 230, 234, ¶ 8, 330 P.3d 987, 991 (App. 2014). For the reasons stated below, we find no misconduct, and therefore, no error on this basis.

### 1.    Alleged Coaching of Witnesses

**¶31**    Kummer identifies several instances where he believes the prosecutor coached or prompted testimony that was inconsistent with information provided in various police and medical reports, which were not admitted into evidence at trial and are not in the record on appeal. First, he contends the prosecutor coached the witnesses to exaggerate the duration of the attack to garner jury sympathy. Second, he argues S.P.L. was coached to claim she had been knocked unconscious during the attack for similar reasons, when that fact was allegedly omitted from the police and medical reports. Third, he argues the Phoenix police officer who received a description of the assailant was coached to say S.P.L. was unsure of the assailant's eye color where she previously reported the assailant had blue eyes.

**¶32**     Our review of the record reveals no evidence the prosecutor coached any of the witnesses to provide any specific testimony about the attack or investigation.  Each witness was placed under oath to testify truthfully, as required by Arizona Rule of Evidence 603, and any minor discrepancies between the testimony and alleged prior inconsistent statements could be fairly attributed to the passage of time between the assault in 2007 and the trial more than six years later.  Moreover, Kummer admits his counsel did not impeach the witnesses with any perceived inconsistencies.  The failure to do so indicates Kummer's counsel apparently believed the differences were of such limited significance as to not make them noteworthy.  This contention, then, would necessarily implicate whether counsel provided ineffective assistance at trial, which we cannot address here.  *Spreitz*, 202 Ariz. at 3, ¶ 9, 39 P.3d at 527.  Accordingly, we find no merit in this argument.

## 2.     Closing Arguments

**¶33**     Kummer also asserts the prosecutor made improper remarks during closing argument that constituted misconduct.  Prosecutors are afforded "wide latitude in presenting their closing arguments to the jury." *State v. Jones*, 197 Ariz. 290, 305, ¶ 37, 4 P.3d 345, 360 (2000).  Nonetheless, "arguments to the jury 'must be based on facts which the jury is entitled to find from the evidence and not on extraneous matters that were not and could not be received in evidence.'"  *State v. Martinez*, 175 Ariz. 114, 119, 854 P.2d 147, 152 (App. 1993) (quoting *State v. Neil*, 102 Ariz. 299, 300, 428 P.2d 676, 677 (1967)).  "We consider arguments made in closing together with the jury instructions to determine 'whether the prosecutor's statements constituted fundamental error.'"  *State v. Haverstick*, 234 Ariz. 161, 164, ¶ 6, 318 P.3d 877, 880 (App. 2014) (quoting *State v. Hernandez*, 170 Ariz. 301, 308, 823 P.2d 1309, 1316 (App. 1991)).

**¶34**     First, Kummer complains "misconduct occurred when [the] prosecutor told [the] jury they could convict [him] just because of [his] prior bad act."  However, Kummer misconstrues the prosecutor's statement.

**¶35**     In addressing the jury, the prosecutor stated "we know that this defendant attacked [S.P.L.] because of his attack on [L.R.]."  The prosecutor went on to explain that the prior act may be used for the "limited purpose" of proving identity, which directly addressed Kummer's defense that he was not the assailant.  The prosecutor told the jury the prior attack could also be used to show Kummer "has a character trait that predisposes him to commit the crimes charged," pursuant to Arizona Rule of Evidence 404(c).  Contrary to Kummer's argument, the prosecutor did not tell the

jurors they could convict him solely because of his prior conviction, but rather informed them, correctly, that Kummer's prior conviction may be used to show identity.

**¶36**        Moreover, the jury was instructed it could only use evidence of the sexual assault committed against L.R. "to establish the defendant's identity, intent[,] motive, preparation, plan, opportunity, knowledge, and/or absence of the [sic] mistake or accident," and when "determining whether the defendant had a character trait that predisposed him to commit the crimes charged in [that] these acts show the defendant's character predisposed him to commit the abnormal or unnatural sexual acts."  The jury was then specifically instructed it could not "consider [the prior] act[] to determine that the defendant acted in conformity with the defendant's character or character trait and therefore committed the charged offense," or "convict the defendant of any of the crimes charged simply because you find . . . that he had a character trait that predisposed him to commit the crimes charged."  Therefore, even if we were to assume the prosecutor's restatement of applicable law constituted misconduct, any resulting harm was cured by the jury instructions.  *See, e.g.*, *State v. Means*, 115 Ariz. 502, 505, 566 P.2d 303, 306 (1977) (affirming refusal to grant new trial on basis of incorrect statements of law in closing argument "in light of court's corrective remark and instructions").

**¶37**        Next, Kummer argues the prosecutor made several factual remarks that were unsupported by the evidence.  The record does not support his argument.  The comments Kummer complains of relate to S.P.L. being knocked unconscious during the attack, S.P.L. and L.R. having similar physical characteristics, the length of the attack, the level of confidence with which S.P.L. stated the perpetrator's eyes were blue when she gave her description of him, and his demeanor during his interview with police.  However, the prosecutor's comments on each of these topics were directly supported by unchallenged testimony at trial.  Although Kummer may disagree, a reasonable jury could have found the testimony credible.  *See State v. Tucker*, 231 Ariz. 125, 139, ¶ 29, 290 P.3d 1248, 1262 (App. 2012) (noting it is the province of the jury, not the appellate court, to assess the witnesses' credibility) (citing *State v. Lee*, 189 Ariz. 590, 603, 944 P.2d 1204, 1217 (1997)).  Once the testimony was admitted, the prosecutor "was entitled to comment on that evidence and to argue all reasonable inferences . . . that might be drawn from it." *Martinez*, 175 Ariz. at 119, 854 P.2d at 152 (citing *State v. Amaya-Ruiz*, 166 Ariz. 152, 171, 800 P.2d 1260, 1279 (1990)).  She did nor err in doing so.

¶38      Kummer next argues the prosecutor made incorrect statements regarding the DNA evidence retrieved from the tape used to blindfold S.P.L. Specifically, he alleges the prosecutor impeached the State's own expert witnesses' testimony by claiming no other male DNA than Kummer's was found on that tape.

¶39      Testimony at trial from the State's experts established that a partial Y-STR DNA profile was obtained from a swab of a dark red stain on the tape that was wrapped around S.P.L.'s head, which was consistent with a DNA profile found on one of the gloves left at the scene. Further testimony demonstrated the DNA profile from the glove matched that of Kummer. On cross-examination, one of the State's experts admitted there was some additional DNA activity on the tape that made it possible another profile was present, but that the sample was inconclusive and insufficient to draw any more detailed conclusions. Kummer called his own DNA expert, who ultimately agreed with the State's experts that the profile provided the possibility of an additional contributor, but could not offer more than a theory that "an unknown gloved individual could have taken the tape from the defendant's residence and used it in the commission of the crime."

¶40      Given this testimony, it was not improper for the prosecutor to argue Kummer's DNA was the only male DNA on the tape. The Y-STR DNA profile taken from the tape was consistent with Kummer's. Although testing indicated an inconclusive result for the presence of additional persons, this did not prove an additional male contributor was present, but merely that there was a possibility of such a contributor. One inference to be drawn was that no such contributor existed; this is the reasonable inference which the prosecutor was entitled to argue. *State v. Gonzales*, 105 Ariz. 434, 437, 466 P.2d 388, 391 (1970) (noting closing arguments are not evidence, and "counsel are permitted to comment on the evidence already introduced and to argue reasonable inferences therefrom") (citing *State v. Propp*, 104 Ariz. 466, 468, 455 P.2d 263, 265 (1969)). Indeed, defense counsel could, and did, argue the opposing inference, that it was untrue there was only one male DNA donor on the tape, leaving ultimate resolution of the issue to the jury. *State v. Hughes*, 104 Ariz. 535, 538, 456 P.2d 393, 396 (1969).

¶41      Finally, "'it is the universal rule that if improper statements are made by counsel during the trial it is the duty of opposing counsel to register an objection thereto so that the court may make a correction by proper instruction.'" *Gonzales*, 105 Ariz. at 437, 466 P.2d at 391 (quoting *State v. Boozer*, 80 Ariz. 8, 13, 291 P.2d 786, 789 (1955)); *see also Hughes*, 104 Ariz. at 538, 456 P.2d at 396 (noting no authority "for the proposition that

the prosecutor should argue the defendant's case for him"). Defense counsel did not object to any of the comments Kummer deems improper. And, upon independent review, we find the prosecutor's remarks do not constitute fundamental error.

### 3. Sentencing Phase

**¶42** Kummer further contends the prosecutor fabricated testimony regarding the length of the attack, the responding neighbor's memory of the attack, S.P.L.'s emotional state when police officers arrived at the scene, and the extent of S.P.L.'s head wound, to influence and confuse the sentencing judge. However, the gist of this argument rests in his contrary interpretation of the evidence presented at trial. Each statement was directly supported by testimony at trial, and none were improper.

**¶43** Kummer also alleges the prosecutor deliberately mixed the facts from the 1992 sexual assault with the 2007 sexual assault "to elicit a response from the judge." But there is no indication in the record that the prosecutor confused the facts, let alone did so deliberately.

**¶44** In sum, we find nothing improper in the prosecutor's handling of this case, and certainly no misconduct sufficient to "permeate the entire trial" and deprive Kummer of a fair proceeding. Accordingly, we find no error.

### C. Alleged Sentencing Errors

**¶45** Lastly, Kummer argues the trial court "lost his impartiality" during sentencing, as evidenced by the "harsh sentencing range" Kummer received. "[W]e review a court's sentencing decision for an abuse of discretion." *State v. Reyes*, 232 Ariz. 468, 471, ¶ 8, 307 P.3d 35, 38 (App. 2013) (citing *State v. Ward*, 200 Ariz. 387, 389, ¶ 5, 26 P.3d 1158, 1160 (App. 2001)). Recognizing the broad latitude of the trial court judge in determining the appropriate penalty, "we will not disturb a sentence that is within the statutory limits . . . unless it clearly appears that the court abused its discretion." *State v. Cazares*, 205 Ariz. 425, 427, ¶ 6, 72 P.3d 355, 357 (App. 2003) (citing *State v. Patton*, 120 Ariz. 386, 388, 586 P.2d 635, 637 (1978), and *State v. Cameron*, 146 Ariz. 210, 215, 704 P.2d 1355, 1360 (App. 1985)).

**¶46** Contrary to Kummer's argument, the harsh nature of the sentence resulted not from an alleged lack of impartiality, but from the nature of the offenses of which Kummer was found guilty, coupled with his three prior felony convictions. The historical priors, to which Kummer admitted at trial, qualified him to be sentenced as a category three repeat

offender and enhanced the applicable sentencing range faced on Counts 1, 2, and 4. A.R.S. § 13-703(C), (J). This enhanced sentencing range was explained to Kummer after the State began introducing evidence of his prior felony convictions, and prior to his admission, and each of the sentences imposed are within the proscribed range. *See* A.R.S. § 13-703(J). Moreover, the trial court was mandated by statute to sentence Kummer to life in prison for his violent sexual assault conviction. A.R.S. § 13-1423(B). As the sentences are within the statutory limits, and the record does not indicate any abuse of discretion, we will not disturb the sentences on appeal.

**¶47** Kummer also argues the trial court failed to award him presence incarceration credit on each count. Kummer was awarded 1,077 days of presence incarceration credit on Counts 1 and 5 only, which were set to run concurrently. The remaining counts were set to run consecutively to Count 1. "When consecutive sentences are imposed, a defendant is not entitled to presence incarceration credit on more than one of those sentences." *State v. McClure*, 189 Ariz. 55, 57, 938 P.2d 104, 106 (App. 1997) (citing *State v. Jackson*, 170 Ariz. 89, 94, 821 P.2d 1374, 1379 (App. 1991), and *State v. Cuen*, 158 Ariz. 86, 88, 761 P.2d 160, 162 (App. 1988)). Because consecutive sentences were imposed, the trial court correctly limited the award of presence incarceration credit to Counts 1 and 5.

## CONCLUSION

**¶48** After reviewing the entire record for reversible error, we find none. *See Leon*, 104 Ariz. at 300-01, 451 P.2d at 881-82. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, Kummer was represented by counsel at all stages of the proceedings and was present at all critical stages. There was sufficient evidence for the jury to find Kummer committed the offenses, and the sentences imposed were within the statutory limits. Accordingly, we affirm Kummer's convictions and sentences.

**¶49** After the filing of this decision, defense counsel's obligations pertaining to Kummer's representation in this appeal have ended. Defense counsel need do no more than inform Kummer of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984).

**¶50** Kummer has 30 days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. *See* Ariz. R. Crim.

P. 31.19(a).  Upon the court's own motion, we also grant Kummer 30 days from the date of this decision to file an *in propria persona* motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
FILED: ama